UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ATKINSON TRUCKING & LOGGING, INC., | ) ) ) |
| Plaintiff | ) ) |
| v. | ) No. 2:15-cv-00202-JHR ) |
| BLANCHARD MACHINERY COMPANY d/b/a IRONMART, | ) ) ) |
| Defendant | ) ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]**

In this suit over a Caterpillar 522 Feller Buncher purchased by the plaintiff from the defendant, the parties have submitted proposed findings of fact and conclusions of law following a bench trial (ECF Nos. 37-39). I now make the following findings of fact and conclusions of law.[2] I find in favor of the defendant, with one limited exception.

**I.   Findings of Fact**

1. The plaintiff, Atkinson Trucking & Logging, Inc.,[3] is a corporation licensed to do business in the state of Maine. Robert Atkinson is the owner and president of the corporation. The business is primarily involved in the cutting and hauling of forestry products, and has been in business for the past 35 years. Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Plaintiff's Proposal") (ECF No. 37) ¶ 1; Defendant Blanchard Machinery Company's Responses to Plaintiff's Proposed Findings of Fact

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me conduct all proceedings in this case, including trial, and to order the entry of judgment. ECF No. 20.
[2] The plaintiff is not pressing its claim for unjust enrichment, which is Count III of its complaint.
[3] Robert Atkinson was also a plaintiff in this action, but he dismissed his claims shortly before trial. ECF Nos. 32 & 33.

1

and Defendant's Proposed Additional Findings of Fact and Conclusions of Law ("Defendant's Response") (ECF No. 38) at 1.

2. This case involves a Caterpillar 522 Feller Buncher serial number 52200236, which the plaintiff purchased from the defendant on October 12, 2013. *Id.* ¶ 2.

3. The plaintiff had previously purchased equipment from the defendant. In 2011, Robert Atkinson, on behalf of the plaintiff, and the defendant, through its employee Rob Jones, had negotiated and completed the plaintiff's purchase of a Tiger Cat Slasher. *Id.* ¶ 6.

4. The plaintiff had previously owned a Caterpillar feller buncher as recently as 2010. That feller buncher had a catastrophic hydraulic failure after only approximately three weeks of use. This left the plaintiff with an outstanding debt of $25,000 on the machine even after it became completely unusable. *Id.* ¶ 8.

5. Prior to contacting the defendant about the feller buncher at issue in this action, Atkinson contacted a number of equipment sellers in Maine, including Milton CAT, in search of a feller buncher. Kurt Saunders at Milton CAT recommended the Caterpillar 521 or 522 as the suitable model for Atkinson. Blanchard's Proposed Additional Findings of Fact ("Defendant's Proposal"), included in Defendant's Response, beginning at 5, ¶ 42; Plaintiff Atkinson Trucking & Logging, Inc.['s] Reply to Defendant Blanchard Machinery Company's . . . Proposed Additional Findings of Fact and Conclusions of Law ("Plaintiff's Response") (ECF No. 39) at 1.

6. Kurt Saunders recommended the Caterpillar 521 or 522 as the suitable model for Atkinson. *Id.* ¶ 43. A new model 522 feller buncher costs close to half a million dollars. *Id.* ¶ 45.

7. The dealers Atkinson consulted in Maine did not have a feller buncher that Atkinson was interested in buying; all the inventory available was either too new and expensive or had too many years and hours of use. *Id*. ¶ 46.

8. In seeking out a feller buncher in 2012, the plaintiff was very much concerned that it not face the problems that it had encountered with the earlier Caterpillar feller buncher. Accordingly, the plaintiff, through Robert Atkinson, informed Rob Jones that the plaintiff did not want to have to do any additional work to the feller buncher that it purchased and that it wanted any feller buncher that it purchased to be ready to work in the woods. The plaintiff specifically used the term "woods ready," which the plaintiff explained is a term used in the industry to refer to a machine that does not require any additional repairs, maintenance, or preparation, but rather is a machine that is capable of immediately going to work in the woods without further repair or preparation. Plaintiff's Proposal ¶ 9; Defendant's Response at 1.

9. Atkinson and Jones had approximately a half-dozen conversations prior to Atkinson's agreement to buy the machine at issue. Defendant's Proposal ¶ 49; Plaintiff's Response at 1. Atkinson declined to travel to inspect the machine before buying it. *Id*. ¶ 51.

10. Jones represented that the defendant's Divisional Service/Operations Manager and Service Department Shop Superintendent "went all over the machine" and that the repairs set forth on the condition report were "all they would recommend." Plaintiff's Proposal ¶ 13; Defendant's Response at 2, ¶ 13.

11. Atkinson recalls that Jones sent him a written condition report on the machine prior to the purchase. Defendant's Proposal ¶ 52; Plaintiff's Response at 1. He recalled that the condition report disclosed that the main boom had a large dent near the knuckle

     boom and had been welded on, that the lower bunching finger cylinder was leaking, that the gathering arm lower pin weldment was cracked and broken away from the frame, and that there was oil of unknown origin visible at the back of the machine. *Id*. ¶ 53.

12. The plaintiff took delivery of the feller buncher in November 2012. Plaintiff's Proposal ¶ 23; Defendant's Response at 1. The machine was one that CAT Financial had repossessed and that the defendant was selling on consignment. Defendant's Proposal ¶ 61; Plaintiff's Response at 1.

13. Atkinson expected to put 1,000 to 1,200 hours per year on the machine. *Id*. ¶ 72. He sent the machine out to a job two hours after it was delivered. *Id*. ¶ 88. Atkinson expected that he would have to perform ongoing repairs and maintenance on the machine after delivery. *Id*. ¶ 90.

14. Shortly after the delivery, while the feller buncher was on its first job, the feller buncher "walked out" of its tracks, meaning that the track on one side broke, making the feller buncher unusable. Soon after the machine was repaired, the opposite side of the tracks also "walked out." As a result, the plaintiff incurred significant costs to repair the tracks and make the machine usable. Plaintiff's Proposal ¶ 25; Defendant's Response at 1.

15. Michael Cano, service manager at Milton CAT, testified that significant wear in tracks, suggesting that they are prone or susceptible to failure, would have been obvious upon a reasonable inspection of the machine. *Id*. ¶ 26.

16. Beginning in December 2012, the feller buncher began to have significant difficulties starting in cold weather. The problem was ultimately diagnosed by Milton CAT to be

the result of the IQAN computer system being cold.  Plaintiff's Proposal ¶ 28; Defendant's Response at 3, ¶ 28.

17. In February 2014, the plaintiff returned the machine to Caterpillar Financial.  *Id.* ¶ 34.  CAT Financial sold it for $111,575.27.  Defendant's Proposal ¶¶ 146, 148; Plaintiff's Response at 1.

18. The plaintiff was sued by Caterpillar Financial Services to recover a deficiency of over $10,000.00.  Plaintiff's Proposal ¶¶ 34-35; Defendant's Response ¶¶ 34-35.

19. The hose assembly is an item of general maintenance for which the defendant is not responsible.  Defendant's Proposal ¶ 92; Plaintiff's Response at 1.

20. The sprockets on the feller buncher at issue lasted as long as they would normally be expected to last.  *Id.* ¶ 98.  When changing the sprockets, one should change the tracks themselves, and that was done in this case.  *Id.* ¶ 99.

21. A cold weather package is not standard equipment on a CAT 522 feller buncher.  *Id.* ¶ 105.  It is optional equipment that Milton CAT typically installs on machines that it sells in Maine.  *Id.* ¶ 106.  Milton CAT would sell a machine to a customer in Maine without that equipment, if the customer ordered the machine that way.  *Id.* ¶ 107.

22. Atkinson did request that the defendant replace the machine's fluids.  *Id.* ¶ 110.  In performing that service, the defendant selected fluids appropriate for the cold-weather conditions in Maine.  *Id.* ¶ 111.

23. In 2013, the hydraulic pump serving the hydraulic systems of the machine was found to have a crack.  Plaintiff's Proposal ¶33; Defendant's Response at 8, ¶ 33.  Although Milton CAT service technicians noted that the pump failure on the machine may have resulted from running too thick hydraulic oil in the winter months, Cano could not offer

an opinion that that was the likely cause of the pump failure.  Defendant's Proposal ¶ 114; Plaintiff's Response at 1.

24.  Prior to delivery, the defendant filled the machine with new CAT-branded ten-weight oil, which is the correct viscosity to use in a machine to be used in Maine and the brand recommended by Caterpillar.  *Id.* ¶¶ 115-17.

25.  Cano presented a claim to the manufacturer's warranty division, and the manufacturer contributed to the cost of the repair of the pump, and reimbursed Milton CAT for its contribution to the cost of repair of the pump.  *Id.* ¶ 119.

26. An entry in a record of the defendant by an unknown service technician in January 2012 states that the hydraulic pump needed to be replaced.  *Id.* ¶ 120.  The entry does not state how much remaining useful life the pump had or why it needed to be replaced.  *Id.* ¶ 121.

27. Exhibit 10 contains invoices for general maintenance items: grease, a battery and a handle assembly.  *Id.* ¶ 128.  The defendant is not responsible for these costs.  *Id.* ¶¶ 129-30.

28. The machine's engine was not skipping when it left the defendant's yard or when it was delivered.  *Id.* ¶¶ 131-32.  The machine began experiencing episodic engine skipping in January 2013.  *Id.* ¶ 133.  It was determined that a bad fuel cap was the cause of the engine skipping, and it was replaced in June 2013.  *Id.* ¶¶ 134-35.  The plaintiff does not seek damages for the cost of this repair.  *Id.* ¶ 136.

29. The machine did not require service between December 28, 2012, and December 10, 2013, other than standard maintenance.  Stipulations (ECF No. 28) ¶ 3.

30.  The plaintiff seeks to recover $32,934.53 in costs of repairs to the machine.  *Id.* ¶ 4.

31. The defendant's Equipment Order Form and Contract of Sale, which is signed by Atkinson, states, *inter alia*, "Machine is sold 'as is'" and that the sale "Includes all repairs discussed per previous email and phone conversation[.]"  Exhibit 1.

32. The defendant's shipping document states, *inter alia*, "WARRANTY: NONE, SOLD AS-IS[.]"  Exhibit 6.

## II.  Conclusions of Law

### A.  Breach of Implied Warranty of Merchantability

The plaintiff's claim for breach of implied warranty of merchantability invokes 11 M.R.S.A. § 2-314, Plaintiff's Proposal at 10, which provides, in relevant part:

> (1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
> (2) Goods to be merchantable must be such as
>     (a) Pass without objection in the trade under the contract description; and
>
> * * *
>
>     (c)  Are fit for the ordinary purposes for which such goods are used[.]

The plaintiff contends that this warranty was breached because the machine "had a troubled history," there were "serious issues with regard to the undercarriage and tracks of the machine" that were revealed when they "failed shortly after delivery," the "hydraulic system" required replacement before the sale but was not replaced and failed "catastrophically" after the sale, and the machine did not operate in cold weather, which was an ordinary purpose for which it was to be used.  Plaintiff's Proposal at 11.

The defendant responds that the use of the term "as is" in the written contract of sale "suffices in itself to disclaim the implied warranty of merchantability" under 11 M.R.S.A. § 2-316(3)(a).  Defendant's Proposal at 19.   That statutory section provides, in relevant part:

> Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common

7

>understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty[.]

On the face of this statutory language, and the written sale documents stating that the machine was sold "as is," the defendant's position appears to be correct.

However, the plaintiff offers several arguments contending that this statutory language does not apply in this case. First, it asserts, one of the two written "as is" statements do not call a buyer's attention to the exclusion of warranties because it is included in a form contract. Plaintiff's Proposal at 11. It cites no authority in support of this argument. Presenting the "as is" statement in capital letters, for instance, as the shipping document does in this case, is sufficient to meet the conspicuousness requirement of subsection 2-316(3)(a). *Scientific Leasing, Inc. v. Morris*, No. 93 C 2258, 1993 WL 524787, at *2 (N.D. Ill. Dec. 14, 1993). On the sale contract, which is only a single page, the disclaimer appears on its own line of text.[4] Both of these factors tend to make the disclaimer sufficiently conspicuous under the statute. *Id.* at 2-3. The plaintiff does not explain how or why the "as is" language in these documents is insufficiently conspicuous. This court has observed that the phrase "as is" is, due to its widespread usage, "immediately recognized as disclaiming warranties even upon casual perusal by nonlawyers." *American Aerial Servs., Inc. v. Terex USA, LLC,* 39 F.Supp.3d 95, 108 (D. Me. 2014). The plaintiff's first argument cannot carry the day.

The plaintiff's second argument regarding the "as is" clause asserts, again without citation to authority, that the sales contract – the shipping document is not mentioned—"made clear" on its face that the machine was not being sold "as is," even though the contract explicitly so states, because it shows that the machine "was being sold subject to a variety of repairs which [the

---

[4] The plaintiff refers to the sale document as a "form contract," Plaintiff's Proposal at 11, but the "as is" language clearly was typed onto the form and specific to this transaction. Exhibit 1.

defendant] was to carry out as part of the transaction." Plaintiff's Proposal at 11. It is clear from both the testimony at trial and the language of Exhibit 1 that the sale would not be final until the specified repairs had been made; that fact means that the "as is" language applied to the machine as repaired. The mere fact of the repairs cannot serve as a matter of law to negate the explicit "as is" language in the contract, nor are the two terms necessarily contradictory.

The plaintiff next contends that the "as is" language "only applies when the buyer had examined the goods as fully as he desired, or alternatively has refused to examine the goods and the defects in question are defects which an examination ought in the circumstances to have [] revealed to the purchaser. *See* § 2-316(3)(b)." *Id*. at 12. This argument misconstrues the statutory language. Subsection 3 of section 2-316 sets out three separate ways in which implied warranties may be excluded; the subsections do not impose cumulative requirements. *See* Uniform Commercial Code Comment ¶¶ 7-8, immediately following 11 M.R.S.A. § 2-316. Thus, subsection a, pertaining to general terms such as "as is," is applicable here, not subsection b.

Finally, the plaintiff asserts that the "as is" term was not discussed, presumably by Atkinson and Jones, and that "it was not made at any point a condition of the sale." Plaintiff's Response at 7. It cites no authority for the proposition that an "as is" disclaimer of implied warranties is effective only if it was explicitly discussed by the contracting parties, and my research has located none. Case law is to the contrary. *E.g., Andren & Assocs. v. Scitex Am. Corp.*, No. 95 C 276, 1995 WL 669109, at *2 (N.D. Ill. Nov. 8, 1995) (fact that parties did not discuss disclaimers in one-page sales agreement does not make them unenforceable). The plaintiff's second assertion is incorrect; the defendant made the "as is" term a condition of the sale when it inserted the phrase in the contract document, which Atkinson signed.

The plaintiff has not shown that it is entitled to recover on a theory of implied warranty.

## B. Express Warranties

The next theory propounded by the plaintiff is that the defendant breached express warranties that it made concerning the feller buncher. Plaintiff's Proposal at 12-13. It identifies these warranties as follows: that the machine would be "appropriate for cold weather application," that it "would have no . . . defects" other than those listed in Exhibit 2 "that could or should be repaired," and that no repairs were necessary for the machine beyond those that were recommended in Exhibit 2. *Id*. at 13. These warranties are found, according to the plaintiff, in Exhibit 2 and "the oral representations made by Mr. Jones[.]" *Id*.

Exhibit 2 itself contains no express warranty. It merely lists a total price, lists repairs included in a $10,000 charge, and states that these repairs were all that the salesman's "divisional service/operations mgr and service department shop superintendent" would recommend after they "went all over this machine." Exhibit 2. The plaintiff does not specify in its proposed conclusions of law nor in its reply to the defendant's proposed conclusions of law the oral representations upon which it relies.

The plaintiff's proposed findings of fact include only the following "oral representations" by Jones that could possibly give rise to such warranties:

> In response to Plaintiff's inquiries [that the machine would be operating in Maine, that Maine was a cold climate, and that the equipment needed to be capable of working in a cold climate], Mr. Jones advised Plaintiff that Blanchard/Iron Mart had on its lot a used Feller Buncher that was suitable for Plaintiff's needs. Defendant, through Mr. Jones, represented to Plaintiff that the Feller Buncher was appropriate, that it was capable of operating in cold temperatures, and that the Feller Buncher would be serviced such that coolants and engine oil would be appropriate for a cold weather application.

Plaintiff's Proposal ¶¶ 10-11.  This cannot reasonably be interpreted as an express warranty that the feller buncher had no defects other than those listed in Exhibit 2, nor that no repairs other than those listed in Exhibit 2 were "necessary."[5]

The parties agree that some of the specific "failures" that the plaintiff proffers as breaches of the alleged express warranties were discussed by Jones and Atkinson, and that Atkinson chose not to have the related repairs made at the time of purchase.  Defendant's Proposal ¶¶ 65-66, 68, 71; Plaintiff's Response at 5 (no mention of these paragraphs)  Thus, while the plaintiff alleges that the defendant's failure to "repair the undercarriage []or appropriately advise the Plaintiff that the undercarriage and tracks were worn and required attention," Plaintiff's Proposal at 13, the plaintiff does not allege that the defendant promised to "appropriately advise" it of all potential defects or repairs that might be needed after the purchase, and the agreed facts establish that the plaintiff "knew the limited useful life in the undercarriage rollers but chose not to have them repaired by Blanchard."  Defendant's Proposal ¶ 68; Plaintiff's Response at 5 (no mention of ¶ 68). In addition, the plaintiff received before delivery a copy of a condition report on the feller buncher at issue that disclosed significant wear in the rollers.  Defendant's Proposal ¶ 67; Plaintiff's Response at 5 (no mention of ¶ 67).  *See also* Exhibit 7 at 4.[6]

Similarly, the fact that "Blanchard failed to advise Plaintiff that the hydraulic pump needed to be replaced, but rather represented that routine maintenance of the hydraulic system was appropriate[,]" Plaintiff's Proposal at 13, to the extent that it is supported by the evidence, does

---

[5] There is no dispute that the defendant did provide the feller buncher with appropriate cold-weather coolants, hydraulic oil, and engine oil.  Defendant's Proposal ¶ 111; Plaintiff's Response ¶ 111.

[6] The plaintiff asserts that the court should "reject Blanchard's Proposed Finding[] of Fact No[]. 102," which states that Atkinson "agreed under cross-examination that the cost of replacing the tracks is not damage Atkinson is seeking compensation for in this lawsuit[,]" "in favor of the Proposed Findings of Fact originally submitted by Atkinson." Plaintiff's Response at 1.  However, none of the proposed findings of fact submitted by the plaintiff appears to contradict this statement.  If the plaintiff means to refer to something included in Exhibits 9, 10, or 16, Plaintiff's Proposal ¶ 40, it is not clear which of those costs were incurred in replacing the tracks.

11

not establish violation of an express warranty. Again, there is no evidence that the defendant promised that no other repairs would be needed after the feller buncher went into service, or that routine maintenance of the hydraulic system would be all that would be needed in the future. Significantly, the plaintiff offers no proposed finding of fact concerning the length of time that passed between the delivery of the feller buncher and the failure of the hydraulic pump. It agrees with the defendant that the pump performed "for almost a year and over 1,000 hours without failure, and did not prevent the [feller buncher] from being ready to go to work in the woods" upon delivery. Defendant's Proposal ¶ 124; Plaintiff's Response at 6-7.[7] From all that appears, the passage of that amount of time and use is consistent with a representation at the time of sale that repair of the hydraulic pump was not then recommended.

The plaintiff has not established that it is entitled to recover on a theory of breach of express warranty.

### C. Negligent Misrepresentation

Maine has adopted section 552 of the Restatement (Second) of Torts, *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[7] The plaintiff's response to this paragraph of the defendant's proposed findings of fact purports to "qualify" it by repeating that "Blanchard had already identified the pump as being defective, needing replacement, and thus the machine was not in fact 'woods ready' at the time of sale[.]" Plaintiff's Response at 6-7. There is no evidence that Blanchard had "identified the pump as being defective." The plaintiff offers no authority to support its contention that a statement in the defendant's records dated January 27, 2012 that "the pump [in the hydraulic system] needs to be replaced[,]" Exhibit 29 at 11-12, means that the feller buncher was necessarily not "woods ready" at the time of sale, particularly when it performed without replacement for nearly a year thereafter.

12

Restatement (Second) of Torts § 552(1) (1977).  The plaintiff relies on this authority.  Plaintiff's Proposal at 13-15.

The plaintiff identifies the following as the false information allegedly supplied by the defendant:

> As Exhibit 2 made clear, the information from Blanchard was that the machine would be appropriate for cold weather applications, and also that only the repairs set forth in Exhibit 2 were those which were required or which should be recommended in order to make the Feller Buncher serviceable.  In fact, the evidence is clear that the Feller Buncher was not appropriate for a cold weather application.  The hydraulic system, despite information available to Blanchard, was not appropriate until the hydraulic pump was replaced, and there is no evidence that the hydraulic pump was in fact replaced prior to sale.  Moreover, the hydraulic pump failed ultimately as a result of extensive cavitation, a circumstance that would not have occurred in a short period of time.  Similarly, Exhibit 3 demonstrates that there were concerns at Blanchard as to the need to work on the undercarriage system.  Nonetheless, there is no indication of any communication with Mr. Atkinson as to this requirement[;] the work on the undercarriage system was not included in the repairs in Exhibit 2, and, without those repairs, the track system failed on two occasions immediately after delivery resulting in significant expense to Mr. Atkinson.  Lastly, Mr. Jones agreed that it was important for Mr. Atkinson to know that the machine has "a troubled history" and thus it was essential for him to make an inspection of the machine and to otherwise understand that the machine may well be problematic.  Mr. Atkinson specifically and vehemently denied that he was provided with this information.  It is striking, given the vehemence with which Mr. Jones suggested that he articulated these issues [] that there is no reference, whatsoever, [of] any such concerns in the emails and memoranda authored by Mr. Jones and sent to Mr. Atkinson.

*Id.* at 14-15.

First, much of this discussion does not concern the provision of false information to the plaintiff, but rather the alleged failure to provide to the plaintiff information known to the defendant.  Nondisclosure generally will not support a cause of action for negligent misrepresentation.  *Weber v. Sanborn*, 526 F.Supp.2d 135, 148 (D. Mass. 2007).  In Maine, nondisclosure rises to the level of supplying false information in connection with a claim of negligent misrepresentation only when the failure to disclose constitutes the breach of a statutory

duty. *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996). No such duty has been pleaded or alleged by the plaintiff in any relevant filings with the court. The plaintiff's argument concerning the alleged failures to provide information accordingly falls short.

It is unclear whether the plaintiff considers the alleged need for replacement of the hydraulic pump to have been an illustration of the alleged lack of readiness for use in cold weather or as a separate required repair of which it was not informed. If the plaintiff intends to make the former argument, it has not shown how the performance of the hydraulic pump was necessarily affected by cold weather and why the fluids placed in the machine by the defendant were not adequate to mitigate the effect of cold weather on the hydraulic pump. If the latter argument is the one presented, the length of time between the sale of the feller buncher and the failure of the hydraulic pump, discussed above, deprives that argument of any persuasive weight. In addition, contrary to the plaintiff's characterization, I do not read Exhibit 2 to represent that the feller buncher "would be appropriate for cold weather applications," Plaintiff's Proposal at 14. It merely states that the defendant would provide engine oil that was of a viscosity that was appropriate for "cold weather app" and coolant that was "good for -20 degrees." Exhibit 2.[8]

Next, the plaintiff's contention that Jones advised Atkinson that the feller buncher was "capable of operating in cold temperatures," Plaintiff's Proposal ¶ 11 and at 14, is denied by the defendant, but without specifics, stating only that the court should reject the contention "in favor of the additional proposed findings of fact submitted herein by Blanchard." Defendants' Proposal at 1-2. I have reviewed all of the defendant's additional proposed findings of fact and find none

---

[8] I do not address the plaintiff's contention that the hydraulic pump "failed ultimately as a result of extensive cavitation, a circumstance that would not have occurred in a short period of time." Plaintiff's Proposal at 14. The plaintiff's proposed findings of fact do not support a finding that the degree of cavitation found in the pump "would not have occurred in a short period of time[,]" or even what "a short period of time" would be under the circumstances of this case.

that contradicts this assertion. Therefore, I deem it admitted, and the plaintiff has established that this was a negligent misrepresentation, as the machine did not have a "cold weather ambient temperature package," which was necessary for cold weather operation, as Jones knew or should have known, and the plaintiff encountered difficulties starting the machine in cold weather and made expenditures in order to make the machine operate properly in cold weather.  Plaintiff's Proposal ¶¶ 15-16, 28-31,[9] testimony of Robert Jones.  This is a limited and specific finding of negligent misrepresentation.

The plaintiff's other specific contentions under the heading of negligent misrepresentation, Plaintiff's Proposal at 14-15, all involve alleged failures to mention information rather than affirmative misrepresentation, and accordingly must fail.

### D.  Damages

I am unable to discern from Exhibits 9, 10, and 16, proffered by the plaintiff "to demonstrate . . . repairs . . . related to the cold weather starting problem, the track problem, a defective hose, and the failure to the hydraulic system[,]" *id*. at 15, which entries relate solely to the cold weather starting problem, which is the only problem for which I have found that the plaintiff has established the defendant's liability.  The plaintiff shall, therefore, submit to the court, with a copy to the defendant, no later than 21 days from the date of this ruling, a list of expenses that it contends were incurred as a result of the feller buncher's difficulty starting in cold weather.  The defendant shall submit its opposition to that list, if any, no later than 14 days thereafter.  The court will then make an award of damages based on those submissions.

---

[9] Again, the defendant says generally that the court should reject these proposed findings "in favor of the additional proposed findings of fact submitted . . . by Blanchard," Defendant's Proposal at 1-2, providing a specific response only to paragraphs 28, 29, and 31.  In those responses, the defendant makes a typographical correction to paragraph 28 and disputes its final sentence; disagrees with information in paragraph 29 on which I do not rely; and qualifies paragraph 31 in a manner that is irrelevant to my conclusions.

The plaintiff also seeks damages in the amount of $50,000 as "Mr. Atkinson's" pecuniary loss "in the amount of the . . . net payments made as part of the purchase of the machine, as well as the deficiency ultimately assessed after repossession of the machine by Caterpillar Financial[.]" *Id*. at 15-16. I assume that the plaintiff equates itself with Atkinson in this demand, as he is no longer a party to this action and cannot recover for his own pecuniary losses, to the extent that those are distinct from the losses of the corporate plaintiff. This demand is based on an assertion that "Mr. Atkinson would not have purchased" the machine, apparently because it was not in fact "woods ready." *Id*. at 15. The cold weather starting problem did not arise until two months after the plaintiff had put the machine into use and thus could not have rendered the machine less than "woods ready" at the time it was purchased. In the absence of a showing of losses, such as lost profits or wages paid to workers who would have been operating the machine during the period that it was under repair and refitting necessitated by the cold weather starting problem, the plaintiff has not established its entitlement to such damages. The evidence does not establish that the plaintiff would not have purchased the machine if it had known that it would not start properly in cold weather without additional modification or that it allowed the machine to be repossessed solely because of that problem, which, from all that appears in the record, was rectified, and the machine put back into use.

### III. Conclusion

For the foregoing reasons, judgment for the defendant shall enter on all claims other than the claim for negligent misrepresentation, included in Count IV, arising from a representation that the feller buncher at issue was, at the time of sale, capable of operating in cold temperatures. Damages shall be determined in accordance with the procedure set out above in this opinion.

The defendant's motion *in limine* (ECF No. 23), to the extent to which I reserved ruling (ECF No. 31), is **DENIED** as to the limited issue of damages caused by the difficulty of starting the feller buncher in cold weather, as described above, and otherwise **GRANTED**.

Dated the 30th day of September, 2016.

                                               /s/ John H. Rich III
                                               John H. Rich III
                                               United States Magistrate Judge